# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **LEE OTERO,** <br><br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL,**[1] **Acting Commissioner of Social Security,** <br><br> Defendant. | **REPORT AND RECOMMENDATION** <br><br> Case No. 2:16-cv-00274-DN-PMW <br><br><br> **Chief District Judge David Nuffer** <br><br> **Chief Magistrate Judge Paul M. Warner** |

Chief District Judge David Nuffer referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Before the court is Lee Otero's ("Plaintiff") appeal of the Commissioner's final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see id*. §§ 1381-1383f. After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not necessary in this case.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this action. *See* docket no. 25.

[2] *See* docket no. 12.

At the outset, the court recognizes that Plaintiff is proceeding pro se in this case. Accordingly, the court will construe his pleadings liberally. *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## BACKGROUND

Plaintiff alleges disability due to various physical impairments. In August 2013, Plaintiff applied for DIB and SSI, alleging disability beginning on July 28, 2012.[3] Plaintiff's application was denied initially and upon reconsideration.[4] In On March 5, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[5] and that hearing was held on December 15, 2014.[6] At the hearing, the ALJ ensured that Plaintiff was aware of his right to be represented by counsel, but Plaintiff chose to waive that right.[7] On February 3, 2015, the ALJ issued a written decision denying Plaintiff's claim for DIB and SSI.[8] On February 10, 2016, the Appeals Council denied Plaintiff's request for review,[9] making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

---

[3] *See* docket no. 6, Administrative Record ("Tr. ___") 171-78, 179-85.

[4] *See* Tr. 83-136, 139-44.

[5] *See* Tr. 145-48.

[6] *See* Tr. 21-71.

[7] *See* Tr. 24-26.

[8] *See* Tr. 5-20.

[9] *See* Tr. 1-3.

On April 14, 2016, Plaintiff filed his complaint in this case,[10] which was eventually assigned to Chief Judge Nuffer.[11] The Commissioner filed her answer and the administrative record on June 20, 2016.[12] On August 1, 2016, Chief Judge Nuffer referred the case to Chief Magistrate Judge Warner under 28 U.S.C. § 636(b)(1)(B).[13]

Plaintiff filed his opening brief on November 18, 2016.[14] The Commissioner filed her answer brief on January 12, 2017.[15] Plaintiff filed his reply brief on January 27, 2017.[16]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute

---

[10] *See* docket no. 3.

[11] *See* docket no. 11.

[12] *See* docket no. 4, 6.

[13] *See* docket no. 12.

[14] *See* docket no. 14.

[15] *See* docket no. 21.

[16] *See* docket no. 22.

[its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant

> is entitled to benefits. If not, the evaluation proceeds to the fourth
> step . . . .

*Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id.*

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.* At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id.*; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## **ANALYSIS**

In support of his claim that the Commissioner's decision should be reversed, Plaintiff does not present any distinct arguments about legal errors made by the ALJ or a lack of substantial evidence to support the ALJ's decision. Instead, Plaintiff essentially argues that he was treated unfairly in the proceedings before the ALJ and that the ALJ's decision is unfair. The

5

Commissioner argues that Plaintiff received a full and fair hearing and that the ALJ's decision is supported by substantial evidence and is legally sound. The court agrees with the Commissioner.

Plaintiff alleged disability primarily due to deficits in using his right arm, and his treating physician discouraged him from using that arm to push, pull, or lift.[17] The vocational expert testified that the jobs the ALJ relied upon to find that Plaintiff not disabled could be performed using only one arm.[18]

Plaintiff reported that his left arm was unimpaired, that he could lift 30 to 40 pounds with it, and that he had adapted to using it for most things.[19] He testified that he could use his right arm to lift 10 pounds or less and sometimes to reach over chest level.[20] Dr. Robert Hillyard opined that Plaintiff could return to work and use his left arm.[21] Consistent with Dr. Hillyard's opinion is the opinion of Dr. Richard Ingebretsen, who noted that Plaintiff had no abnormalities with his uninjured left upper extremity and that Plaintiff was able to sign his name with his left hand.[22] Dr. Ingebretsen also noted that Plaintiff retained full grip strength and nearly full arm strength, even in his injured right upper extremity, and that Plaintiff could lift, carry, and handle light objects with both hands.[23] Furthermore, Plaintiff reported that he sometimes rode his bike

---

[17] *See* Tr. 15, 308, 311.

[18] *See* Tr. 64-66.

[19] *See* Tr. 13-14, 36-50, 315.

[20] *See* Tr. 13, 42-43.

[21] *See* Tr. 15, 308.

[22] *See* Tr. 14, 315-16.

[23] *See* Tr. 13-14, 315-16.

for transportation, indicating an ability to use at least his uninjured left arm.[24] Dr. Dennis Taggart and Dr. Ana Hotley both reviewed the record and opined that Plaintiff could perform a range of light work with limited use of his right arm.[25] *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling ("SSR") 96-6p (providing that reports of reviewing state agency physicians are expert opinions the ALJ must consider). Additionally, and consistent with those opinions and the ALJ's decision, Plaintiff testified that he had actually been able to work part-time in a job that did not require much use of his right arm.[26] In short, the record reflected that Plaintiff retained some use of his right arm, but could perform the jobs relied upon by the ALJ even without use of that arm. Therefore, the ALJ did not err by determining that Plaintiff was not disabled.

Plaintiff argued at the hearing that he could no longer do the type of work he had done in the past.[27] However, as the ALJ correctly explained, disability requires not only the inability to perform past work, but the inability to perform any other work existing in significant numbers in the national economy.[28] *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (explaining that an individual shall be found disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

---

[24] *See* Tr. 13-14, 42.

[25] *See* Tr. 15, 89-91, 100-02, 111-12, 121-22.

[26] *See* Tr. 14, 26-27, 34-36.

[27] *See* Tr. 67.

[28] *See id*.

exists in the national economy"); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth the five-step sequential evaluation process and explaining that, if a claimant cannot perform his past work, the agency proceeds to assess whether he can perform other work in the national economy).

Plaintiff also argued at the hearing that he was not trained for the jobs identified by the vocational expert and was not sure he could find such a job in Salt Lake City, Utah, where he lives.[29] However, as the ALJ explained at the hearing, the jobs at issue are unskilled and can be learned on the job in less than 30 days,[30] thus requiring no previous training or experience. *See* SSR 82-41 ("Unskilled occupations are the least complex types of work."); SSR 83-10 ("Unskilled work may be performed by individuals with no work skills or no work experience."). Furthermore, the vocational expert testified that there were jobs available both in the regional and national economies, even though only a significant number of national jobs are required. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (recognizing that "the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy" and holding that the Commissioner is not required to show that job opportunities exist in the local area). Additionally, it does not matter whether the "[w]ork exists in the immediate area where [the claimant] live[s]," "[a] specific job vacancy exists," or the claimant "would be hired if [he] applied for work." 20 C.F.R. §§ 404.1566(a)(1)-(3), 416.926(a)(1)-(3).

---

[29] *See* Tr. 44, 66-67.

[30] *See* Tr. 68.

8

For those reasons, the ALJ's decision is supported by substantial evidence and is free from any legal errors. Accordingly, the Commissioner's final decision should be affirmed.

As a final matter, although they are not grounds for reversing the Commissioner's final decision, the court will address Plaintiff's arguments concerning the fairness of the proceedings before the ALJ and the ALJ's decision. Plaintiff first argues very generally that the proceedings before the ALJ and the ALJ's decision were unfair to him. He appears to believe that this might be because he did not have counsel, and he argues that he should not have to hire counsel to be found disabled. However, the hearing transcript reflects that the ALJ complied with his duty to ensure that Plaintiff was aware of his right to be represented by counsel and knowingly waived it.[31] Furthermore, the ALJ's decision reflects that it was based squarely on record evidence, not Plaintiff's pro se status.

Plaintiff next argues that he was late in receiving or did not receive unspecified documents from the agency while his disability applications were pending. But, even if true, Plaintiff has not demonstrated how he was harmed. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). The record reflects that Plaintiff appealed at each level of review and fully participated at his administrative hearing. Thus, Plaintiff has not demonstrated any reversible error.

Finally, Plaintiff contends that his hearing was unfair because the ALJ asked if he had done work "under the table" (*i.e.*, without paying taxes). However, a review of the hearing transcript reveals that the ALJ was merely trying to resolve apparent conflicts between Plaintiff's

---

[31] *See* Tr. 24-26.

9

testimony about his work history and his official earnings records.[32] This was a reasonable inquiry and does not demonstrate unfairness by the ALJ, particularly given that the ALJ did not rely on it in making his decision.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the court concludes that Plaintiff received a full and fair hearing and that the ALJ's decision is supported by substantial evidence and is free of legal errors. Accordingly, IT IS HEREBY RECOMMENDED that the Commissioner's decision in this case be AFFIRMED.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 8th day of September, 2017.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[32] *See* Tr. 57-59, 189-94.